SO ORDERED: May 06, 2010.





_____
Anthony J. Metz III
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| UNION-GO DAIRY LEASING, LLC, ) | Case No. 10-01703-AJM-11 |
| ) | |
| Debtor. ) | |
| _____) | |

**ORDER GRANTING AGSTAR FINANCIAL
SERVICES, FCLA'S MOTION FOR RELIEF FROM STAY**

This cause comes before the Court on the "AgStar Financial Services FCLA's Motion For Relief From Stay" (CM/ECF Docket No. 20) (the "Motion For Relief From Stay") filed by AgStar Financial Services, FCLA ("AgStar"); the "Response And Objection To Motion For Relief From Stay" (CM/ECF Docket No. 34) (the "Stay Relief Objection") filed by Union-Go Dairy Leasing, LLC, as debtor and debtor-in-possession (the "Debtor"); and the "Brief In Support Of Debtor's Response In Opposition To Relief From Stay" (CM/ECF Docket No. 43) (the "Brief") filed by the Debtor. The Court, having conducted an evidentiary hearing on the Motion For Relief From Stay, and the Stay Relief Objection on April 14, 2010 (the "Evidentiary

1

Hearing") and having conducted a further hearing on the same as well as the Brief on April 23, 2010 (the "Supplemental Hearing")[1], makes the following findings of fact and conclusions of law:

1. The Debtor executed a promissory note in favor of AgStar on December 28, 2005 in the principal amount of $4,600,000.00 (the "Note").

2. The Note was secured by an Open-End Mortgage by the Debtor in favor of AgStar dated December 28, 2005 (the "Mortgage"). The Mortgage gave AgStar a security interest in certain real estate located in Randolph County, Indiana (the "Real Estate") as well as its rents, issues and profits and all buildings, improvements, fixtures and crops thereon, and all rights, appurtenances, privileges, interests, easements, minerals, including coal, oil, gas and all rights therein including mineral and oil and gas leases and all other property further described in the Mortgage (the "Collateral").

3. The Mortgage was duly acknowledged and recorded on December 28, 2005 as Instrument No. 20056481 in the Office of the Recorder of Randolph County, Indiana.

4. The Debtor used the proceeds of the Note to build and equip a dairy barn with 2000 stalls. The Debtor then leased the Real Estate and its improvements to Union Go-Dairy, LLC (the "Dairy").[2]

5. Dairy was and is the sole lessee of the Real Estate. The current monthly rent for the Real Estate is $12,500.00 (the "Rents").

---

[1] The Court also conducted an evidentiary hearing on the "Motion To Dismiss Debtor's Chapter 11 Bankruptcy Case" (CM/ECF Docket No. 19) (the "Motion To Dismiss") filed by AgStar and the "Response And Objection To Motion To Dismiss" (CM/ECF Docket No. 33) filed by the Debtor on April 14, 2010. As explained in further detail below, the Court's ruling on the Motion For Relief From Stay moots AgStar's Motion To Dismiss.

[2] Although not germane to the Court's decision as to the Motion For Relief From Stay and the corresponding Stay Relief Objection and Brief, Dairy is a debtor and debtor-in-possession by virtue of filing a petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on February 3, 2010 in the United States Bankruptcy Court for the Southern District of Indiana, Indianapolis Division, under case number 10-01175-JKC-11.

6. In 2009 the dairy industry experienced a decline in milk prices. Following this decline Debtor defaulted under its obligations to AgStar under the Note and Mortgage in September 2009.

7. AgStar provided the Debtor with a notice of default, and on February 3, 2010 AgStar filed a lawsuit against the Debtor in the United States District Court for the Southern District of Indiana, Indianapolis Division under Case No. 1:10-cv-00145-SEB-TAB seeking, in pertinent part, judgment against the Debtor on the Note, foreclosure of the Mortgage, replevin of the Collateral, and a sale of the Real Estate (the "District Court Suit").

8. AgStar, concurrently with the filing of the District Court Suit, filed an Emergency Motion for the Appointment of a Receiver of the Real Estate. Ultimately, the Honorable Sarah Evans Barker conducted a hearing on the motion to appoint a receiver on February 16, 2010, and after hearing the arguments of counsel, indicated she would enter an order appointing a receiver on February 17, 2010.

9. The Debtor filed its voluntary petition under chapter 11 of the Bankruptcy Code on February 17, 2010, just before an order appointing a receiver over the Real Estate was entered in the District Court Suit.

10. The Debtor's schedules show AgStar as being undersecured as to the Collateral.

11. On March 22, 2010 AgStar filed the Motion For Relief From Stay, asserting that it was entitled to relief under §§ 362(d)(1) and (2) of the Bankruptcy Code for the following reasons: (a) cause existed to lift the automatic stay because the Debtor's bankruptcy petition was filed in bad faith; (b) cause existed to lift the automatic stay because the Debtor could not provide AgStar with adequate protection for the use of AgStar's Collateral postpetition; and (c)

the Debtor lacked equity in the Real Estate and it was not necessary for an effective reorganization because the Debtor could not reorganize.

12. The Stay Relief Objection contends that the Court should deny the Motion For Relief From Stay because: (a) the Debtor could reorganize; (b) the Debtor could adequately protect AgStar for the Debtor's postpetition use of the Collateral; and (c) the Court should withhold ruling on the Motion For Relief From Stay while the Dairy tries to resolve its case and the Debtor's case.

13. AgStar did not call any witnesses at the Evidentiary Hearing and instead presented legal arguments based on its Motion For Relief From Stay.

14. In addition to legal argument, the Debtor called Ad Nieuwenhuis, Manager of the Debtor, as a witness at the Evidentiary Hearing. Pertinent to this Court's decision was the following testimony: (a) the Debtor did not have any employees or creditors other than AgStar and MainSource Bank; (b) the Dairy paid all expenses associated with the Real Estate; (c) the Debtor has not provided any financial statements to any parties in the last two years; and (d) the Debtor has not received any financing commitments postpetition.

15. Counsel for the Debtor indicated that it will have, based upon an agreement with MainSource Bank, available cash of $700.00 per month.

16. At the Supplemental Hearing further arguments of counsel were made. Pertinent here is that counsel for the Debtor conceded that the Real Estate was being depreciated over 27 years and that the equipment on the Real Estate was being depreciated over 10 years as stated in an attachment to the Debtor's filings in this case.

17. Because the Court does not believe that the Debtor can adequately protect AgStar for the diminution in value to the Real Estate and the Rent resulting from the Debtor's

4

postpetition use of the Real Estate and the Rent, the Court finds that cause exists for granting AgStar relief from the automatic stay pursuant to § 362(d)(1) of the Bankruptcy Code and that is unnecessary to address the remaining contentions in the Motion For Relief From Stay. Furthermore, the Court's lifting of the automatic stay as to AgStar makes the Motion To Dismiss moot.

18. Section 363(c)(1) of the Bankruptcy Code allows a debtor to use, sell or lease property in the ordinary course of business. Accordingly, upon filing a debtor is authorized to use the Real Estate postpetition.

19. Furthermore, § 363(c)(2) of the Bankruptcy Code allows a debtor to use, sell, or lease cash collateral (as defined in § 363(a) of the Bankruptcy Code), but only if: (a) the entity that has an interest in the cash collateral consents; or (b) the Court, authorizes such use, sale or lease in accordance with that section of the Bankruptcy Code. Both parties agree, and this Court finds that the Rent is cash collateral. It follows, then, that in order to use the Rent, the Debtor must either have the consent of AgStar or an order from this Court.

20. Section 363(e) of the Bankruptcy Code provides that a secured creditor can condition a debtor's postpetition use, sale or lease of collateral, including cash collateral, on the receipt of adequate protection.

21. Adequate protection, in turn, is defined in § 361 of the Bankruptcy Code as: (a) a cash payment or periodic cash payments to a secured creditor to the extent the debtor's postpetition use diminishes the value of the property subject to the security interest; (b) an additional or replacement lien in favor of the secured creditor to the extent the debtor's postpetition use diminishes the value of the property subject to the security interest; or (c) the

granting of an administrative expense in favor of the secured creditor to the extent the debtor's postpetition use diminishes the value of the property subject to the security interest.

22. Here, the Debtor desires to use both the Real Estate and the Rents. That means that the Debtor must provide AgStar with adequate protection not only for the Debtor's postpetition use of the Real Estate but also for the Debtor's use of the rents generated from the Real Estate.

23. AgStar argues that the Debtor is unable to adequately protect AgStar for the diminution in the value of the Real Estate and the Rents caused by the Debtor's postpetition use because: (a) the Debtor cannot make any cash payment to AgStar because it only has $700 of monthly income available for operations; (b) the Debtor cannot grant AgStar a replacement lien because the Debtor has no unencumbered property; and (c) any grant of an administrative expense would be worthless because the Debtor lacks sufficient cash to operate postpetition.

24. The Debtor does not contest its obligation to provide adequate protection to AgStar, but argues that the Debtor can satisfy its adequate protection requirement as follows: (a) the Real Estate is not diminishing in value, and therefore no adequate protection under § 361 of the Bankruptcy Code is required; and (b) the Debtor will grant AgStar a replacement lien in future Rent for the ability to use current Rents generated from the Real Estate to fund the Debtor's postpetition operations.

25. The Court finds the Debtor's arguments unpersuasive. First, the Real Estate is depreciating per the Debtor's own filings in this case, and Mr. Nieuwenhuis' testimony that the Real Estate is not depreciating is not convincing. Accordingly, the Court finds that the Real Estate is diminishing in value as a result of the Debtor's postpetition use and that in order to

continue to use the Real Estate the Debtor must provide AgStar with adequate protection for this diminution in value.

26. Furthermore, the use of the postpetition Rents for the Debtor's operations would diminish their value. The Debtor then also must give AgStar adequate protection in order to use any of the Rents.

27. The Debtor therefore must demonstrate it can provide adequate protection for two distinct pools of collateral—the Real Estate and the Rents—in order to overcome the Motion For Relief From Stay. The evidence in the hearing demonstrated that the Debtor can do neither.

28. The Rent is a special kind of collateral under the Bankruptcy Code. Traditionally, a secured creditor's security interest in cash collateral generated postpetition is cut off as of the petition date by § 552(a) of the Bankruptcy Code. However, a prepetition security interest in rents of property subject to a security agreement entered into prior to the petition date continues in full force and effect postpetition by virtue of § 552(b) of the Bankruptcy Code.

29. It follows, then, that AgStar is fully secured in all prepetition and postpetition Rents. Because AgStar already has a postpetition lien in the Rents, the Debtor's argument that it can offer AgStar a replacement lien in postpetition Rents as adequate protection for the use of such Rents is not well taken. The Debtor simply cannot give AgStar a replacement lien in the Rents where AgStar's interest in such postpetition Rents was already fully secured by virtue of § 552(b) of the Bankruptcy Code.

30. The Debtor argued in the hearing that future payments of rent would serve as replacement liens for cash collateral created by existing rents on deposit. Thus, in the Debtor's view, if $10,000 in rents held by the Debtor as cash collateral were used by the Debtor, Agstar's "replacement lien" would be the next month's $10,000 rent payment, and when that $10,000 rent

7

payment was used, Agstar's replacement lien after that would be the next $10,000 rent payment, and so on, with this arrangement continuing into the future. However, such a pattern does not amount to a replacement lien for cash collateral used. For example, if $10,000 of cash collateral were used to make widgets which could be sold to third parties, the replacement liens would be in the sale proceeds or accounts receivable resulting from the sale. If the widgets were sold for $15,000, the lender would obtain a $10,000 lien on the resulting sale proceeds or receivables, sufficient to replace the cash collateral that was used to make the widgets in the first place. If this scenario repeated the next month, the debtor would have used $20,000 of the lender's cash collateral, which would have been adequately protected by replacement liens in the $30,000 generated in receivables. Under the Debtor's theory, the cash collateral would never exceed $10,000 because the rents paid in this case do not operate on the same principle. To be sure, there is no "replacement" lien to be given….the rents themselves are fully liened so there is nothing unencumbered within which to provide a "replacement" lien. Furthermore, in the widget example, the cash collateral used produces something that generates proceeds in return. That is not the case here. The rents in this case will be used to pay administrative expenses and to maintain the physical assets but they will not generate receivables for the Debtor. The amount of cash collateral accrues incrementally each month yet the Debtor's offer of adequate protection remains static at $12,500. After one year, $150,000 of Agstar's cash collateral is used, ($12,500 multiplied by 12), with adequate protection offered by the Debtor of $12,500. Thus, Section 552's preservation of the lien in rents operates differently than the typical example of where the post petition asset is unencumbered with the lender receiving a replacement lien for its use.

31.     The Debtor and other interested parties did properly point out that § 552(b) of the Bankruptcy Code provides that Court, after notice and a hearing and based on the equities of the

8

case, may effectively cut off a secured creditor's liens in rents generated postpetition. A debtor with employees or one that performs some function might trigger this exception. In addition, an oversecured creditor may trigger the exception. Here, however, the Debtor is merely a pass through entity which has no employees, pays no operational expenses, and merely passes the Dairy's lease payment through to AgStar. Furthermore, AgStar is undersecured. Accordingly, the Court finds that no equities are present which would justify a departure from the application of § 552(b) of the Bankruptcy Code.

32.     Without the ability to grant AgStar a replacement lien on the Rents, the Debtor is left with only two forms of adequate protection with which to justify the use of the Real Estate and the Rents: a cash payment or an administrative expense claim.

33.     The facts and testimony before this Court indicate if the Rents cannot be used for operations, the Debtor will have $700 of income with which to operate postpetition. At the Evidentiary Hearing and the Supplemental Hearing, counsel for the Debtor acknowledged that in the very least the Debtor would incur U.S. Trustee fees and professional fees due to its postpetition operations. Furthermore, the Debtor is currently depreciating the Real Estate at a rate of $7,500 per month for tax purposes, meaning that the Debtor believes that the Real Estate is depreciating at a rate which is not *de minimus*.

34.     Because the Debtor will incur administrative expenses while remaining in bankruptcy and that it has, by its own filings, indicated that the Real Estate is depreciating in an amount much greater than $700 per month, the Court finds that the Debtor lacks sufficient funds to make a cash payment or periodic cash payments to AgStar in an amount sufficient to adequately protect it from the diminution in value of Real Estate resulting from the Debtor's

postpetition use. Nor can it provide AgStar with cash payment to adequately protect it for any Rents used postpetition.

35. Similarly, the Court finds that by generating a gross income of only $700 per month, any administrative claim granted by the Debtor in favor of AgStar would not adequately protect AgStar from the diminution in value of the Real Estate or Rents resulting from the Debtor's postpetition use.

36. Based on the foregoing, the Court believes that AgStar has met its burden of demonstrating that the Debtor cannot adequately protect AgStar for the diminution in value of the Real Estate or the Rents caused by the Debtor's postpetition use of that property. Cause therefore exists under § 362(d)(1) of the Bankruptcy Code for granting AgStar the relief requested in the Motion For Relief From Stay.

37. The automatic stay therefore is and shall be terminated as to AgStar.

38. The Stay Relief Objection and Brief hereby are and shall be overruled.

39. The Motion To Dismiss is denied as moot.

###